# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 01:24-cv-____-___-___

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

v.

AMER SPORTS WINTER & OUTDOOR COMPANY,

    Defendant.

## COMPLAINT AND JURY DEMAND

## NATURE OF THE ACTION

This is an action under the Age Discrimination in Employment Act ("ADEA") against Defendant Amer Sports Winter & Outdoor Company ("Amer Sports" or "Defendant") to correct unlawful employment practices in violation of the ADEA and to provide appropriate relief to Ian Decker. As alleged with greater particularity below, Amer Sports discharged Decker in retaliation for engaging in protected activity under the ADEA. During a 2019 company restructure, Amer Sports created a new role above Decker's and appointed younger, less experienced individuals to the position without giving Decker or his colleagues the opportunity to apply. When Decker complained to management and Human Resources that this constituted age discrimination, he was warned that if he pursued his complaint, it would negatively impact his career. Decker nevertheless escalated his complaint to Amer Sports's Global Vice President, and Amer Sports terminated him less than six weeks later.

## JURISDICTION AND VENUE

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 7(b) of the ADEA, as amended, 29 U.S.C. § 626(b), which incorporates by reference Sections 16(c) and 17 of the Fair Labor Standards Act of 1938 (the "FLSA"), as amended, 29 U.S.C. §§ 216(c) and 217.

2.  The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Colorado.

## PARTIES

3.  Plaintiff, the Equal Employment Opportunity Commission (the "EEOC" or "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of the ADEA and is expressly authorized to bring this action by Section 7(b) of the ADEA, 29 U.S.C. § 626(b), as amended by Section 2 of Reorganization Plan No. 1 of 1978, 92 Stat. 3781, and by Public Law 98-532 (1984), 98 Stat. 2705.

4.  At all relevant times, Amer Sports, a Delaware corporation, has continuously been doing business in the State of Colorado, and has continuously had at least 20 employees.

5.  At all relevant times, Amer Sports has continuously been an employer engaged in an industry affecting commerce under Sections 11(b), (g) and (h) of the ADEA, 29 U.S.C. §§ 630(b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

6.  On September 28, 2020, more than thirty days prior to the institution of this lawsuit, Ian Decker filed charge number 541-2020-03367 with the Commission alleging violations of the ADEA by Defendant.

2

7. On October 7, 2020, the EEOC provided Defendant with notice of Decker's Charge of Discrimination.

8. The Commission investigated Decker's charge of discrimination.

9. On March 6, 2024, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe the ADEA was violated.

10. The Letter of Determination invited Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and to effect voluntary compliance with the ADEA through informal methods of conciliation, conference and persuasion within the meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626(b).

11. The Commission engaged in communications with Defendant to provide it the opportunity to remedy the unlawful employment practices described in the Letter of Determination.

12. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

13. On July 31, 2024, the Commission issued to Defendant a Notice of Failure of Conciliation.

14. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

### Decker's Background

15. By the time Decker joined Amer Sports, he had over 25 years of experience in the recreational gear industry and very strong relationships with retailers in the Rocky Mountain region.

16. Within the last 20 years, Decker has held several positions in the sports gear industry, including community marketing manager for Eastern Mountain Sports, a manufacturer's representative for Alpine Sales Inc., and a senior sales representative for Helly Hansen.

## Decker's Employment with Defendant

17. Decker began working for Amer Sports in May 2018 as a Territory Manager selling Arc'teryx branded recreational gear.

18. In this role, Decker coordinated sales of Arc'teryx's products to retailers, many of whom he had developed extensive relationships with.

19. Decker's strong Rocky Mountain region connections, along with his many years of experience, are part of the reason Amer Sports hired him.

20. Early on in his employment with Amer Sports, a complaint was made about Decker's style of communication based on his communications with colleagues on another internal team.

21. Decker first learned of the concern about his communication style when he was put on a Performance Improvement Plan ("PIP") in December 2018, directing him to change his communication style.

22. When Decker was confronted with this PIP, as noted later in his PIP evaluation, he "started [the] process with a fair amount of reflection and introspection, rather than blame others, he took responsibility and was intent on improving his work relationships."

23. Over the course of the PIP, Decker "ma[de] deliberate steps to engage with his peers on the sales team and to foster relationships with the internal team in HQ."

4

24. Decker was successful in changing his communication style and successfully completed the PIP in August 2019.

25. The final evaluation for the PIP in August 2019 noted that "the conditions and behavior that precipitated the need for the PIP are in the past."

26. Throughout his employment with Defendant, including during his PIP, Decker's sales were consistently impressive and above average.

27. In December 2019, Decker received a substantially complimentary performance review, receiving either "solid" or "impressive" ratings in each of five review areas.

28. In this performance review, Decker's immediate supervisor emphasized Decker's excellent sales results and his substantial improvement in communication style and relationships with colleagues.

29. First, Decker had a "solid" overall evaluation, in which his manager noted his "impressive financial results" and "an impressive improvement/turn-around over 2018."

30. Decker was rated "impressive" for the objective of achieving his assigned sales targets, as he "achieved MAX H1 target," "achieved MAX territory target," and "achieved MAX REI territory target."

31. Decker's December 2019 performance review also noted that he "knocked it out of the park this year with a 119 index, 22 points above the regional specialty average."

32. Decker achieved ratings of "solid" or "impressive" for his personal objectives and managerial skills.

33. Decker also achieved a "solid" rating for his communication and teamwork, confirming his "solid improvements over 2018" and "significant turnaround in 2019 with regards to communication and teamwork."

34. In addition, Decker's supervisor described Decker as "a sales professional and a consummate planner" who is "diligent in his daily tasks and is among the best planners I've ever managed."

35. At no point after his PIP ended in August 2019 until his termination on March 2, 2020 did Decker receive any complaints or comments from anyone at Amer Sports about his communication style.

## Amer Sports's Restructure & Decker's New Role

36. In December 2019, an outside investor group acquired Amer Sports.

37. This investor group reorganized Amer Sports's supply chains and sales structure, eliminating intermediaries between manufacturers and retail stores.

38. After the reorganization, Amer Sports's brand manufacturers sold products directly to stores carrying the brand's products.

39. Decker's wholesale division became a part of Amer Sports's retail division, but Decker retained the title of Territory Manager.

40. On December 10, 2019, at a Denver-Regional Epicenter dinner, Decker learned about Amer Sports's reorganization.

41. At the time of the dinner, Decker was 50 years old.

42. At the December 10, 2019 dinner, it was announced that as part of Amer Sports's restructuring, Decker's role as Territory Manager would be subordinated to a newly created leadership position called the "Denver-Regional Epicenter Lead."

43. At the December 10, 2019 dinner, Decker learned that he would report to Epicenter Lead (EL) Brett Knight.

6

44. At that time, Knight was in his 30s and had limited wholesale coordination experience.

45. 32. Decker had neither been informed of nor granted the opportunity to apply for the EL position.

46. Decker was surprised and disappointed to learn that the EL role had been filled with someone younger and less qualified.

47. After the Denver-Regional Epicenter dinner, Decker reached out to other Territory Managers, all of whom were around Decker's age.

48. These Territory Managers confirmed that they too had new ELs who were much younger and less experienced.

49. These other Territory Managers also confirmed that they had been neither informed of nor granted the opportunity to apply for the EL positions.

50. Many of the other Territory Managers agreed with Decker that Amer Sports appeared to be prioritizing youth over experience, but they were too afraid to voice their complaints to management for fear of losing their jobs.

51. Although Amer Sports eventually eliminated some of the Territory Manager positions as part of the restructure, Decker's position was not eliminated, due in part to his strong Rocky Mountain region connections.

52. Decker continued to perform well as a Territory Manager.

53. Decker received no complaints or discipline related to his job performance after Amer Sports's restructure.

54. Decker continued to maintain his strong relationships with Amer Sports's retailers, outsold his counterparts for 2020, and had the highest sales index amongst his peers.

**Decker's Complaints About Age Discrimination**

55. Based on what he learned during the Denver-Regional Epicenter dinner and from other Territory Managers, Decker believed that Amer Sports had engaged in age discrimination during the organization's restructure.

56. On December 11, 2019, Decker emailed Human Resources (HR) Representative Rosvall Petra, telling her that he wanted to have a confidential conversation.

57. In his meeting with Petra, Decker complained that the company had engaged in age discrimination during its restructure.

58. Petra told Decker she would be leaving the company shortly and he should bring his concerns to HR Representative Laura Appleton.

59. Petra also told Decker, however, that he should take some time to decide if he really wanted to pursue the issue, implying it would not end well for his career.

60. Decker also decided to speak with his Regional Director, Elliot Nolan, about his concerns.

61. On December 11, 2019, Decker spoke with Nolan about Amer Sports's supply chain restructure and the possibility of reporting to Nolan directly.

62. Several of Decker's younger peers reported to Nolan directly, and Decker believed he should report to Nolan as well.

63. Decker and Nolan then had several more conversations about the restructure.

64. On January 10, 2020, Nolan rejected Decker's proposal and told Decker he could not report directly to Nolan.

65. Nolan instead suggested that Mr. Decker mentor Knight and help him learn the wholesale side of the industry, which Mr. Decker knew well.

66. Decker responded by expressing his concern that Amer Sports engaged in age discrimination by failing to post the EL positions so that he and other Territory Mangers could learn about the positions.

67. Decker also responded by expressing his concern that Amer Sports engaged in age discrimination by hiring younger, less experienced individuals for EL positions without allowing older, more experienced Territory Managers or other employees to apply for them.

68. In addition, Decker mentioned he wanted to speak with HR Representative Appleton about his concerns.

69. Nolan responded by telling Decker that if he complained to Appleton, he would likely find himself without a job.

70. On January 13, 2020, Decker called Appleton and left her a voicemail describing his concerns and asking her to call him back.

71. On January 17, 2020, Decker spoke with Appleton.

72. During this call, Decker again expressed his concerns about Amer Sports's failure to advertise the EL positions before appointing Knight and other younger, less experienced employees to fill the positions, expressing his belief that this constituted age discrimination against Decker and the other older Territory Managers.

73. Appleton told Decker she would "look into" his concerns.

74. In a follow-up call on January 20, 2020, Appleton told Decker the company stood by the decisions it made during the restructure.

75. Appleton then offered to forward Decker's complaints "up the chain" to Global Vice President C.J. King.

76. When Appleton made this offer, however, she suggested it would have negative consequences for his employment, asking Decker if that was "really what [he] want[ed] to do."

77. Despite fearing for his job, Decker asked Appleton to elevate his complaints to Global Vice President King.

78. On January 27, 2020, Decker spoke with King about his conversation with Appleton and again relayed his concerns of age discrimination and requested to report directly to Nolan.

79. In response, King stated that Decker would not be permitted to usurp the company's organizational structure and Decker could either get on board with the restructure or leave Amer Sports entirely.

80. On January 27, 2020, after this phone call with King, Decker emailed Appleton and reiterated his concerns about Amer Sports's age discrimination.

81. In his email, Decker stated, "That the [EL] positions were never posted, thereby denying qualified and experienced Territory Managers the opportunity for promotion."

82. Decker further stated in his email, "That the [EL] positions were filled with objectively less qualified, younger candidates over older more experienced, more qualified territory managers, with the effect of having an adverse career impact on those Territory Managers."

83. Decker finally stated in his email, "That some Territory Managers were exempted from the new Epicenter reporting structure and allowed to report directly to the same Marketing Manager as the [ELs] based solely on geography."

84. On February 4, 2020, Appleton responded by email.

85. Appleton's response did not address Decker's age discrimination concerns but instead stated that Amer Sports's "business strategy supported" its restructuring decisions.

86. Appleton also told Decker that he should pursue his career aspirations by leveraging the online Arc'teryx careers website and discussing his goals with his supervisors.

87. The EL positions, however, had never been posted on Arc'teryx's, or any other, website.

## **Decker's Termination**

88. After his communications with Nolan and Appleton, Decker did not raise the issue again and did not hear anything more about his age discrimination complaints.

89. On February 25, 2020, Knight emailed Decker setting a meeting for Monday March 2, 2020 at Amer Sports's Boulder showroom.

90. At that meeting on March 2, 2020, Knight terminated Decker.

91. Knight stated only that "the company is going in a different direction."

92. Nolan also attended the meeting.

93. When Decker pressed Knight and Nolan for a more specific reason for his termination, Nolan referred to Decker's "communication style."

94. Neither Nolan nor Knight gave Decker any other explanation for his termination.

95. On March 5, 2020, Amer Sports sent Decker a letter formalizing his termination.

96. At the time of his termination, Decker was 50 years old.

97. Decker was the only sales employee terminated in March 2020.

98. Decker's termination took place 53 days after Decker first complained about age discrimination to Nolan.

99. Decker's termination took place only 36 days after Decker raised his complaints about age discrimination by phone to Global Vice President King and by email to HR Representative Appleton.

100. On May 11, 2020, Amer Sports hired Joshua Tedeschi, who was 32 years old, to fill Decker's role as Territory Manager.

101. Based on Tedeschi's resume, he had fewer years of sales experience in the recreational gear industry than Decker.

## CLAIM FOR RELIEF
### Retaliation
### (29 U.S.C. § 623(d))

102. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

103. On several occasions, including at least December 10, 2019, December 11, 2019, January 17, 2020, January 20, 2020, and January 27, 2020, Decker expressed his belief that Amer Sports had engaged in age discrimination.

104. Decker's complaints constituted protected activity under the ADEA.

105. On February 25, 2020, less than one month after Decker's written complaint to Appleton and his verbal complaint to King, Knight and Nolan scheduled a termination meeting for March 2, 2020.

106. Knight and Nolan terminated Decker on March 2, 2020.

107. Decker's termination constituted an unlawful employment practice in violation of Section 623(d) of the ADEA, 29 U.S.C. § 623(d).

108.    The effect of Amer Sports's conduct described in the paragraphs above has been to deprive Decker of equal employment opportunities and otherwise adversely affect his status as an employee because of his protected activity.

109.    The unlawful employment practices described in the paragraphs above were intentional and willful within the meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626(b).

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

A.    Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from retaliating against any employee for engaging in protected activity under the ADEA, including terminating an employee for engaging in protected activity under the ADEA.

B.    Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for individuals 40 years of age and older, and which eradicate the effects of its past and present unlawful employment practices.

C.    Grant a judgment requiring Defendant to pay Decker appropriate back wages and lost benefits in an amount to be determined at trial, an equal sum as liquidated damages, and prejudgment interest.

D.    Order Defendant to make Decker whole by providing the affirmative relief necessary to eradicate the effects of its unlawful practices, including but not limited to reinstatement or front pay and reasonable attorney's fees and costs.

E.    Order Defendant to provide training specific to the requirements of the ADEA for its managers, supervisors, and non-supervisory employees.

      I.      Grant such further relief as the Court deems necessary and proper in the public interest.

      J.      Award the Commission its costs of this action.

### JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted this 23 day of October, 2024.

                              Karla Gilbride
                              General Counsel

                              Christopher Lage
                              Deputy General Counsel

                              Mary Jo O'Neill
                              Regional Attorney
                              Phoenix District Office

                              Laurie Jaeckel
                              Assistant Regional Attorney
                              Denver Field Office

                              *s/ Carey DeGenaro*
                              Carey DeGenaro
                              Trial Attorney
                              950 17th Street, Suite 300
                              Denver, CO 80202
                              (720) 779-3649
                              carey.degenaro@eeoc.gov

                              EQUAL EMPLOYMENT OPPORTUNITY
                              COMMISSION

                              Phoenix District Office
                              3300 North Central Avenue
                              Suite 690
                              Phoenix, AZ 85012

**PLEASE NOTE**: For purposes of service upon the EEOC, it is sufficient that pleadings, notices, and court documents be served upon the Trial Attorneys. Duplicate service is not required on the General Counsel and Deputy General Counsel in Washington, D.C.

15